## HENRY A. JOHNSON v. BANKERS MUTUAL CASUALTY INSURANCE COMPANY.[1]

March 5, 1915.

Nos. 19,073—(273).

**Death by drowning — evidence.**

1. The evidence in this case sustains a finding that deceased suffered death from accidental drowning.

**Demand for autopsy.**

2. Where a policy of accident insurance gives to the insurer the right, in case of death, to an autopsy by a medical adviser, and the policyholder suffers death claimed to be accidental, and leaves a widow who is also sole beneficiary, the widow is the proper person upon whom to make demand for an autopsy.

**Same.**

3. It is not necessary that the demand be made upon her in person, so long as it is communicated to her.

[1] Reported in 151 N. W. 413.

**Same.**

4. Such a demand to be effective must be made within a reasonable time after death and at a reasonable time and upon a proper occasion, and, when made upon the widow between the death and burial of her husband, the language should leave nothing to intendment but should be free from doubt or ambiguity.

**Same — refusal of demand — right of action.**

5. In this case a demand for an autopsy was made by the claim auditor of the company at 10:18 a. m. The funeral was set for 1 p. m. Friends were beginning to arrive from a distance and the body was being prepared for burial. The demand was a present demand calling for present compliance or refusal. The medical adviser whom the auditor had in mind to perform the autopsy was in Minneapolis, many miles away. Compliance with the demand would have caused a delay in the funeral obsequies, the extent of which cannot be determined. The claim auditor had been within two miles of the place of demand investigating the cause of death since the day before. *Held,* the demand for an autopsy was not made at a reasonable time or upon a proper occasion, and its refusal did not defeat right of action under the policy.

**Waiver of notice of claim.**

6. Failure to give notice of claim within the time stipulated in the policy is waived where, in response to the notice, the company denies liability wholly on another ground.

**Cross-examination of defendant's claim auditor under the statutes.**

7. No reversible error can be predicated on a ruling permitting plaintiff to call the claim auditor of defendant for cross-examination under the statute, where plaintiff did not seek to avoid his testimony and the form of the questions would have been proper had he been called as plaintiff's witness.

Action in the district court for Washington county by the administrator of the estate of A. L. Swenson, deceased, to recover $600 upon defendant's policy of insurance for the death of his intestate. The case was tried before Stolberg, J., and a jury which returned a verdict for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Simon Michelet* and *Clyde R. White,* for appellant.

*Wilson & Thoreen,* for respondent.

HALLAM, J.

A. L. Swenson held a policy of accident insurance issued by defendant, covering death from accidental injury, and payable in case of his death to his estate. On June 15, 1913, Swenson was visiting with a relative, Peter Holm, on a farm situated on Sand lake, a small lake near New Scandia, in Washington county. He dressed himself in a bathing suit, took a row boat, went a short distance out upon the lake and dove head first into the water. He came up once, appeared to struggle, and then sank and was seen no more alive. Next day the body was recovered. There were some bruises on the face which the evidence shows must have been caused before death. There is abundant evidence of accidental drowning, in fact the evidence would not sustain any other conclusion. There is some evidence that deceased had suffered from heart trouble, but no substantial evidence that he died from any such ailment. The defenses urged are as follows:

The policy provided that: "The company shall in no event be liable * * * in any case where any medical adviser appointed by it shall have been denied the right or opportunity of making a personal examination, or of holding an autopsy in case of death." It is claimed that the right to an autopsy was denied. The facts as to this are as follows: C. E. Drennan, claim auditor of defendant, learned of the death of deceased about 11 a. m. of June seventeenth. He was then at Minneapolis. He telephoned this plaintiff who was the local agent of the defendant at New Scandia, and at 5:25 p. m. took a train for Copas, the nearest railway point to New Scandia. He arrived at Copas at 6:53 and at New Scandia at 7:30. He was then within two miles of the Holm farm, where deceased met his death, and where the body of deceased then was, and where the widow of deceased then was. Drennan spent the evening at New Scandia making investigations. About 10 a. m. the next day he was driven in an automobile to the Holm residence. The funeral was set for 1 p. m. Numerous friends and relatives from a distance had already gathered to attend the funeral, and more were expected on an eleven o'clock train. In this situation, and at 10:18 a. m. Drennan sought out Mrs. Magney, the mother of the widow of de-

ceased, and, as he himself testified, made the following demand: "The. substance of it was, that under our policy we had the right of performing an autopsy in case of death, and that as a representative of the company I wished to have that right in order to determine the cause of death and see whether there was anything due them under the policy or not." Mrs. Magney communicated the demand to the widow of deceased. The demand was refused. Drennan testified that the reason given was "they said they thought it was too close the time of the funeral."

Plaintiff does not question the validity of this provision in the policy which gave defendant a right to demand an autopsy, and, if the demand for an autopsy was properly made, its refusal defeats any right of action in the policy. The question is as to the sufficiency of the demand.

The demand was made upon the proper person. The widow of deceased was the sole beneficiary under the policy and she had control of the body of deceased. Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L.R.A. 85, 28 Am. St. 370; Lindh v. Great Northern Ry. Co. 99 Minn. 408, 109 N. W. 823, 7 L.R.A.(N.S.) 1018. She alone had the right to say whether or not an autopsy should be held. It was proper that the demand be addressed to her.

It was proper also to communicate the demand to her through her mother. It was not necessary that demand be made upon her in person. A decent respect for the proprieties of the occasion made it peculiarly proper that defendant communicate through some one who could better approach her with a matter of serious business than could a stranger.

We are of the opinion, however, that the time and circumstances of the demand were such that its refusal did not operate to defeat plaintiff's right of action. We must bear in mind that, except for some formal requirements, and except for the chance that the autopsy would develop facts of which we have no knowledge, the right of action upon this policy had fully accrued. The forfeiture of a right_ of action through the operation of a condition subsequent, will be enforced only where the right to such forfeiture is plain. 25 Cyc. 821. The right to an autopsy given by this provision of

the policy was one calculated under the most favorable circumstances to cause some distress of mind to the family of deceased, and, although no time was fixed when the exercise of the right might be demanded, a due regard for the sensibilities of the survivors clearly requires that there should be some limitation as to the time and occasion of such a demand. We are cited to no decided case involving a state of facts just like the case at bar. There are many cases, however, which hold in general terms that a demand for an autopsy, under a policy containing provisions similar to this, must be made within a reasonable time after death. Wehle v. United States Mut. Accident Assn. 153 N. Y. 116, 47 N. E. 35, 60 Am. St. 598; Ewing v. Commercial Travelers Mut. Accident Assn. 55 App. Div. 241, 66 N. Y. Supp. 1056; Root v. London Guarantee & Accident Co. 92 App. Div. 578, 86 N. Y. Supp. 1055; American Employers Liab. Ins. Co. v. Barr, 68 Fed. 873, 16 C. C. A. 51; Cooley, Briefs on Law of Ins. 3449 (g). In Wehle v. United States Mut. Accident Assn. supra, it was said, "Although no time is specified within which the permission to examine may be availed of, still, a due regard for the sentiments of the family and friends of the deceased, if not public policy, required as immediate an exercise of the option to examine as was possible." On similar principle, we think it must also be held that such a demand, to be effective, must be made *at* a reasonable time and upon a proper occasion. We are of the opinion that demand made in this case was not made at a reasonable time or upon a proper occasion.

.We think the natural purport of the demand was for an autopsy to be held at once. The language of the demand would naturally be so understood, and it evidently was so understood by all parties. The reason given for its refusal is indicative of this. It is suggested now that the widow might understand the demand as one for an autopsy after the funeral obsequies had taken place, but defendant's representative made no suggestion of this sort, even when the ground given for refusal of the demand was that it was too close to the time of the funeral. One in the situation of the widow of deceased is not to be expected to make counter-propositions or suggestions or to construe language used in such a demand in any but its plain and

obvious meaning.  When an insurance company feels called upon to serve a notice upon a widow between the time of the death and burial of her husband, and when the character of the notice is such that her conduct in reference thereto may result in the forfeiture of insurance money, the right to which has already accrued, the language of the notice should leave nothing to intendment, and should be free from doubt or ambiguity.  We construe the demand made by the claim auditor as a present demand, calling for present compliance or refusal.

Now, the examination which defendant had a right to demand was for an examination by a "medical adviser appointed by it."  We should not consider that it was necessary that the medical adviser make the demand in person, if one were appointed and at hand for the purpose of performing the autopsy.  But clearly a demand made by a claim auditor, with no "medical adviser" at hand could avail nothing.  This claim auditor was not a physician, and he had no physician with him.  His testimony is that he had in mind one of the company's doctors located in Minneapolis, and who was in Minneapolis at that time.  The autopsy must await his coming.  The claim auditor testified that the autopsy could have been held before the time set for the funeral, but the evidence is conclusive that it could not.  Compliance with his demand would have caused a delay in the funeral obsequies, the extent of which we have no means to determine.  There was no reason why the demand could not have been made several hours earlier, if not the day before.  The claim auditor had learned of the death of deceased nearly 24 hours before.  From the early evening before, and for nearly 15 hours, he had been within 10 minutes ride of the place where the body lay and where the widow and her near relatives were.  Yet he deferred his visit and his demand until the eleventh hour and presented his demand under circumstances which must inflict upon the widow not only the distressing experience of an autopsy upon the body of her husband, but the harrowing ordeal of a suspension of the funeral as well.  The policy should not be construed as giving the defendant the right to demand an autopsy under such conditions.  The undisputed facts fail to sustain this ground of defense, and it is accordingly unneces-

sary to consider the propriety of the instructions to the jury on this subject.

The policy contained a provision that "no claim shall be valid unless written notice thereof shall be given the company * * * within twenty days from the date of death * * * unless such notice may be shown not to have been reasonably possible." Notice of claim was made July 11, more than 20 days after death. This failure to give notice of claim within the time prescribed in the policy is now asserted as a defense. There are several reasons why this defense is not available. We need mention but one. On July 21, defendant replied to the notice given denying liability on the policy on the express ground that "the right which we have of holding an autopsy in case of death was denied us on June 18th." The denial of all liability on this ground alone was a waiver of the objection that notice was not given in time. 1 Corpus Juris, 480; Levine v. Lancashire Ins. Co. 66 Minn. 138, 146, 68 N. W. 855; Butler Brothers v. American Fidelity Co. 120 Minn. 157, 139 N. W. 355, 44 L.R.A. (N.S.) 609; Taylor-Baldwin Co. v. Northwestern Fire & Marine Ins. Co. 18 N. D. 343, 122 N. W. 396, 20 Ann. Cas. 432, note 438; Canadian R. Acc. Ins. Co. v. Haines, 44 Can. Sup. Ct. 386, 21 Ann. Cas. 916; Fisher v. Travelers' Ins. Co. 124 Tenn. 450, 511, 138 S. W. 316, Ann. Cas. 1912D, 1246.

It is contended the court erred in permitting plaintiff to call Mr. Drennan for cross-examination under the statute. The party calling him did not seek to avoid his testimony, and the form of the questions propounded would have been proper if the witness had not been called for cross-examination. No reversible error can therefore be predicated upon the ruling. Leystrom v. City of Ada, 110 Minn. 340, 125 N. W. 507.

Order affirmed.