## AXEL SEJRUP v. A. W. SHEPARD AND ANOTHER.[1]

October 29, 1937.

No. 31,416.

*Rietz & McBrien,* for appellant.
*Harold E. Stassen* and *Fallon Kelly,* for respondents.

HILTON, JUSTICE.

Appeal from a judgment of the district court of Dakota county vacating a temporary restraining order issued against the defendants.

Defendant Shepard is the coroner of Dakota county, and defendant MacPhee is deputy coroner. Marie Sejrup died February 23, 1937, and plaintiff is her surviving spouse. Following the death of Mrs. Sejrup, a partial autopsy was performed and the body was interred in a cemetery near Farmington, Minnesota. The partial autopsy included an analysis of the contents of the stomach of the deceased, and a report thereon was not received until about two weeks after the body had been buried. The analysis disclosed the presence of a small quantity of a substance in the stomach which may be strychnine. In order to determine whether it actually is strychnine and also whether it was the cause of death, it will be

[1]Reported in 275 N. W. 687.

necessary to have a further autopsy involving an examination of other organs of the deceased, and an inquest. She is supposed to have come to her death by violence.

Defendant Shepard ordered an inquest for March 29, 1937, and ordered defendant MacPhee to exhume the body and have it present at that time. Plaintiff thereupon secured a temporary restraining order preventing the disinterment of the body pending the further order of the court and ordering the defendants to show cause why an injunction should not issue. The matter was submitted to the court without a jury and without oral testimony. The court found the facts to be substantially as we have stated them here, and concluded that the temporary restraining order should be vacated and discharged. This appeal is from the judgment entered pursuant thereto.

Plaintiff does not question the court's findings. The precise question presented for our determination is whether or not the coroner has the legal right to exhume the body of the deceased for the purpose of holding an inquest. Plaintiff contends that he does not have such right by virtue of any of the statutes of this state and that the common law therefore controls. There are apparently few cases dealing with this question. There is considerable doubt as to what the common-law rule was. We have had the advantage of exhaustive research by very able counsel on both sides. We think, however, that the answer to the question, at least as far as this state is concerned, is to be found in our statutes relating to coroners and inquests.

Upon reading these statutes, the conclusion seems inescapable that the presence of the body at every inquest is contemplated. 1 Mason Minn. St. 1927, § 949, provides in part:

"When the jurors appear, the coroner shall call their names, and then, *in view of the dead body,* administer to them the following oath: 'You do swear that you will diligently inquire, and due presentment make, on behalf of the state of Minnesota, when, how, and by what means the person *whose body lies before you* did come to his death, * * *'" (Italics supplied.)

The oath required of witnesses at the inquest by 1 Mason Minn. St. 1927, § 951, is in part:

" 'You do solemnly swear that the evidence you shall give to this inquest concerning the death of the person *lying before you dead* shall be the whole truth  *  *  *.' "  (Italics supplied.)

1 Mason Minn. St. 1927, § 953, relating to the inquisition and its form, provides in part as follows:

"The jury, *upon inspection of the dead body,* and after hearing the testimony and making the needful inquiries, shall draw up and deliver to the coroner the inquisition,  *  *  *"  (Italics supplied.)

If these statutes are to be complied with it is evident that the body must necessarily be present.  1 Mason Minn. St. 1927, § 946, relating to inquests, provides:

"Coroners shall hold inquests upon the dead bodies of such persons *only* as are supposed to have come to their death by violence,  *  *  *"  (Italics supplied.)

No claim is made in this case that the coroner did not have authority to hold an inquest.  It is undisputed that deceased is supposed to have come to her death by violence.  In enacting § 946 it must have been obvious to the legislature that facts leading to a supposition or appearance of death by violence might not become evident until after the burial of the body in question.  And no inquest could be held under the express provision of § 946 unless and until a supposition of death by violence did exist.  Thus, in requiring the presence of the body at the inquest, the statutes we have cited, impliedly at least, give the coroner the authority to exhume the body upon which the inquest is to be held.  Our statutes do not require him to secure a court order authorizing the exhumation. This would seem to be best, inasmuch as the time element is of the utmost importance in such proceedings, and the delay resulting from litigation, because of the processes of decomposition, might thwart the very purpose for which the body is sought to be exhumed.

We are not unmindful of the duty owed to the dead and the regard which must be had for the feelings of relatives and friends.

The disturbance of the resting place of those who have passed on is not a matter to be lightly taken. However, the interest of the state and its citizens in enforcement of the laws must prevail over these considerations when it appears likely that a crime has been committed.

We do not mean to hold that coroners may exhume bodies indiscriminately, even for the purpose of holding an inquest. It might appear that because of the passage of time or because of other factors tending to destroy the evidences of the cause of death the inquest would not accomplish its purpose, or sufficient cause for holding the same did not exist, or because of considerations of public health and welfare it would not be advisable to permit the exhumation of a dead body. In such cases, or in any other case where a proper showing was made, an injunction to prevent such exhumation should, and undoubtedly would, issue. However, this is not such a situation.

Affirmed.