In the Matter of the **EXHUMATION AND AUTOPSY OF William E. McKINSTRY.**

No. C4–85–246.

Court of Appeals of Minnesota.

Aug. 20, 1985.

Review Denied Sept. 26, 1985.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, for John C. Henry, Steele County Coroner.

Renee L. Worke, Rietz, Rietz & Rietz, Owatonna, for Kay McKinstry.

Heard, considered and decided by RANDALL, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

The Steele County Coroner requested the exhumation and autopsy of William E. McKinstry. McKinstry's widow refused her consent, so the coroner requested a court order as provided in Minn.Stat. § 390.11, subd. 3 (1984). The trial court denied the order, and the coroner appeals. We reverse.

## FACTS

William McKinstry, age 32, died sometime during the early morning hours of July 8, 1984. He was found by friends at about noon that day, lying near his motor-

cycle in a field just off County Road 14. These friends told a deputy sheriff at the scene that McKinstry had been drinking heavily the night before.

McKinstry was transported to Owatonna Hospital; upon arrival he had no pulse, heart beat, or blood pressure. There were no apparent physical injuries, either internal or external, except for a small cut on the back of his head. One of the physicians asked Kay McKinstry's permission to perform an autopsy, which she refused. Dr. Carlyle Welch signed the death certificate, which listed the cause of death as "cardiac arrest [of unknown cause] due to or as a consequence of [a] motorcycle accident." McKinstry's funeral took place on July 11, 1984.

Dr. John Henry, a Steele County coroner for 18 years, became aware of McKinstry's death on the day of the funeral, when a newspaper reporter contacted him with questions. He contacted the hospital to find out why he had not been notified of McKinstry's death. He discovered that both physicians on duty in the emergency room that day were new to Minnesota and were unfamiliar with the reporting requirements under Minnesota law. *See* Minn. Stat. § 390.11, subd. 7; § 390.32, subd. 6. In late August Dr. Henry became aware that tests done on a sample of McKinstry's blood showed the absence of any alcohol or drugs.

In September 1984 the County Sheriff and Dr. Henry met with Kay McKinstry to again ask her permission for an autopsy. They requested the autopsy because McKinstry had been a young, apparently healthy, man; he had sustained no apparent physical injuries that were severe enough to cause his death; and, despite the information they had received to the contrary, his blood sample showed no trace of alcohol or drugs. Kay McKinstry again refused their request.

Dr. Henry then asked the Steele County Attorney to apply for a court order authorizing McKinstry's exhumation and autopsy under Minn.Stat. § 390.11, subd. 3. The district court ordered a hearing to take place on December 9, at which Kay McKinstry and witnesses for the coroner testified. The trial court denied the order.

## ISSUE

Did the trial court abuse its discretion in denying the coroner's request for exhumation and autopsy?

## ANALYSIS

Minn.Stat. § 390.11 governs a coroner's powers to investigate deaths and conduct inquests. In the case of violent deaths, defined as those "apparently homicidal, suicidal, or accidental," and those occurring under "unusual or mysterious circumstances," a coroner may conduct an autopsy without the consent of a surviving spouse or next of kin. *See id.*, subds. 1 and 2. The statute further provides:

> [T]he coroner may * * * *exhume* any human body and perform an autopsy thereon * * * when in the judgment of the coroner the public interest requires an autopsy; provided that no such autopsy shall be conducted unless the surviving spouse, or next of kin if there be no surviving spouse, consents thereto, or unless the district court of the county wherein the body is located or buried shall, upon such notice as the court directs, enter its order authorizing * * * an exhumation and autopsy. Application for such an order may be made by the coroner or by the county attorney of the county wherein the body is located or buried, upon such showing as the court deems appropriate.

(Emphasis added). An identical provision governs the powers of medical examiners for those counties that have abolished the office of coroner. *See* Minn.Stat. § 390.32.

■ The coroner contends that he is empowered to investigate McKinstry's death because it was a violent death or one under unusual circumstances, as provided in § 390.11, subd. 1. Only the coroner or medical examiner has the authority to issue a death certificate in those cases. *See* Minn.Stat. § 390.23. Consequently, the

coroner argues, the emergency room physician had no authority to sign McKinstry's death certificate. He further contends that had he been notified of McKinstry's death before the funeral, he would have insisted on an autopsy at that time.

In denying the order, the trial court reasoned:

> Although [Dr. Welch] did not have the requisite authority to sign the Certificate of Death, the Steele County Coroner did not thereafter seek a Court Order to exhume. Upon the signing of the Certificate of Death the deceased was lawfully buried.
>
> There has been no evidence presented by any law enforcement personnel of any past or present investigation in this matter which would indicate any other sufficient public concerns to exhume the body.

By concluding that Dr. Welch did not have the authority to sign the death certificate, the trial court impliedly found that McKinstry's death was violent or unusual and initially should have been reported to the coroner. However, the trial court was apparently influenced by the fact that the coroner did not immediately seek an exhumation order and that the sheriff had not proceeded further with an investigation into McKinstry's death.

■ Minn.Stat. § 390.11 specifically provides that an exhumation and autopsy are permissible when "in the judgment of the coroner the public interest requires an autopsy." The statute thus grants wide discretion to the coroner which is subject to judicial approval only when exhumation is necessary and the next of kin refuses to consent. The Minnesota Supreme Court described the coroner's authority and discretion as follows:

> It is true that [the coroner] may not arbitrarily order an autopsy when a properly made investigation has disclosed to him the cause of the death. It cannot be made to satisfy an idle curiosity, or for

the information of some interested insurance company, or to give some doctor a fee, or for any purpose not within the law.

*Kingsley v. Forsyth*, 192 Minn. 468, 471, 257 N.W. 95, 97 (1934). *See also Sejrup v. Shepard*, 201 Minn. 132, 135, 275 N.W. 687, 688 (1937) (coroners may not exhume bodies "indiscriminately"). Judicial review is therefore appropriate only to ensure that the coroner's investigation is within the law.

■ The trial court's finding that Dr. Henry initially had the authority to perform an autopsy and should have signed the death certificate is supported by the record. The court's conclusion, however, that he no longer has this authority because he failed to proceed quickly enough is erroneous. Dr. Henry was not notified of McKinstry's death until the day of the funeral. He has sufficiently explained why the autopsy was not performed earlier, when he did not need Mrs. McKinstry's consent. It is apparent that he is legitimately investigating McKinstry's death and did not request the exhumation arbitrarily or to satisfy "idle curiosity." This is an "appropriate showing," *see* Minn.Stat. § 390.11, subd. 3, and the trial court should have granted the order.

■ Furthermore, the trial court's finding that "at this time any medical findings which may be detected would be extremely limited" is also erroneous. The coroner testified that while it might be difficult to discern any foreign *substance* in the body, any internal physical injury would be "very much in evidence." [1]

### DECISION

The county coroner made an appropriate showing that his investigation of William McKinstry's death requires exhumation and an autopsy.

Reversed.

---

**1.** Because "the time element is of the utmost importance in such proceedings," *Sejrup v. Shepard*, 201 Minn. at 134, 275 N.W. at 688, the State should probably have sought expedited review or a writ of mandamus from this court.